# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| SCHNITZER WEST, LLC, and PUYALLUP 5th AVE, LLC, | No. 54984-1-II |
| Appellants, | |
| v. | UNPUBLISHED OPINION |
| CITY OF PUYALLUP, a Washington municipal corporation, | |
| Respondent. | |

MAXA, J. – Schnitzer West, LLC appeals the trial court's grant of summary judgment in favor of the City of Puyallup and dismissal of Schnitzer's claims against the City for tortious interference and under 42 U.S.C. § 1983 based on an equal protection violation. The claims arose from the Puyallup city council's passage of Ordinance 3067 (the Ordinance) in 2014 that applied a zoning overlay only to property that Schnitzer had contracted to purchase (the Property). The Ordinance limited the size of a building that could be constructed on Schnitzer's property, which Schnitzer alleged hindered its plans to develop the property. But Schnitzer did not file suit until 2019, after challenging the Ordinance in an appeal under the Land Use Petition Act, chapter 36.70C RCW (LUPA).

Schnitzer argues that the court erred in granting summary judgment because it presented sufficient evidence to create genuine issues of material fact on the elements of its tortious

interference and § 1983/equal protection claims. However, we hold that (1) the legislative immunity doctrine precludes Schnitzer's tortious interference claim, and (2) the three-year statute of limitations bars Schnitzer's § 1983 claim. Therefore, we affirm the trial court's grant of summary judgment in favor of the City.

FACTS

*Background*

In 2009, the City created the Shaw-East Pioneer Overlay Zone (SPO Zone). At the time, the Property was outside the City's boundaries. The City annexed the Property in 2012, which was zoned for industrial and business park uses. The City did not extend the SPO to the Property at that time.

In 2013, Schnitzer contracted to purchase the Property with plans to develop it. Schnitzer submitted a comprehensive plan amendment and rezone request to the City to change the zoning to a light manufacturing/warehouse zone (ML). The city council approved the rezone. The new zoning designation allowed construction of a warehouse on the Property.

However, in 2014 the city council subsequently adopted a 120-day emergency development moratorium that applied to the area annexed in 2012, including the Property. Before its enactment, Schnitzer submitted a short plat application to construct a 470,000 square foot warehouse on the Property. This application vested the proposed project under existing land use regulations.

Several city council members then drafted the Ordinance, which extended the SPO zone to the Property. The city council enacted the Ordinance in May 2014. The Ordinance amended certain sections of the Puyallup Municipal Code, added new sections to the Code, and amended the City's zoning map.

2

The Ordinance created and applied a new overlay zone for limited manufacturing uses. But this overlay zone applied only to the Property, and did not apply to surrounding properties even though those properties had similar characteristics and zoning. The Ordinance imposed significant new development regulations on the Property, including limiting the size of buildings constructed on the Property to 125,000 square feet.

*Procedural History*

In 2014, Schnitzer challenged the Ordinance under LUPA. The LUPA petition alleged that adoption of the Ordinance had damaged Schnitzer in amounts to be proved at trial. The superior court ruled in June 2015 that the Ordinance was an unlawful site-specific rezone and therefore was invalid as a matter of law. Following the superior court's decision, Schnitzer completed its purchase of the Property. The purchase price was slightly over $1.5 million.

The City appealed the superior court's invalidation of the Ordinance to this court. *Schnitzer W., LLC v. City of Puyallup*, 196 Wn. App. 434, 439, 382 P.3d 744 (2016) [*Schnitzer* I]. The City superseded the superior court's judgment, which meant that the Ordinance remained in effect. This court acknowledged that a site-specific rezone was a land use decision subject to LUPA review, but noted that one requirement of a site-specific rezone was an application by a specific party. *Id.* at 440-41. The court determined that the Ordinance was not a site-specific rezone because it did not result from an application by a specific party, but instead was initiated by the city council. *Id.* at 442-44. Therefore, the Ordinance was not a land use decision subject to review under LUPA. *Id.* at 444. The court reversed and remanded for the superior court to dismiss Schnitzer's LUPA petition. *Id.*

In May 2016, while the appeal was pending before this court, Schnitzer sold the Property to a Viking JV, LLC dba Running Bear Development Partners, LLC. The sale price was $9.25 million. Viking subsequently constructed a large warehouse on the Property that the City approved without regard to the Ordinance, relying on the short plat application Schnitzer had filed before the Ordinance was enacted.

Schnitzer appealed this court's decision dismissing the LUPA petition to the Supreme Court. *Schnitzer W., LLC v. City of Puyallup*, 190 Wn.2d 568, 574, 416 P.3d 1172 (2018) [*Schnitzer* II]. The court held that the City could be a specific requesting party, and therefore the Ordinance was a site specific rezone and subject to LUPA review. *Id.* at 580. The court also addressed a LUPA exclusion for " 'applications for legislative approvals such as area-wide rezones and annexations.' " *Id.* at 580 (quoting RCW 36.70C.020(2)(a)). The court concluded that the Ordinance was not a legislative approval subject to the LUPA exclusion. *Id.* at 580-83. The court remanded to this court to address the merits of the City's appeal of the superior court's decision under LUPA. *Id*. at 583.

On remand, this court affirmed the superior court's invalidation of the Ordinance because Puyallup violated its own procedural requirements for site-specific rezones. *Schnitzer W., LLC v. City of Puyallup*, No. 47900-1-II, slip op. at 2 (Wash. Ct. App. July 9, 2019) (unpublished) (*Schnitzer* III), D2 47900-1-II Unpublished Opinion.pdf (wa.gov). Under the Puyallup Municipal Code, rezone applications are within the jurisdiction of the hearing examiner. *Id.* at 11. Therefore, this court ruled that the City should have commenced a hearing before the hearing examiner when considering a rezone rather than deciding the matter at the city council. *Id.* at 12.

*Schnitzer's Damages Lawsuit*

In March 2019, after the Supreme Court had remanded the LUPA appeal to this court, Schnitzer filed a lawsuit for damages against the City. The lawsuit asserted four claims, including tortious interference. In April 2020, Schnitzer filed an amended complaint that added claims under 42 U.S.C. § 1983, including a claim based on an alleged equal protection violation.

The City filed a summary judgment motion on the original claims, and later filed a summary judgment motion on the § 1983 claims. The trial court in separate orders granted summary judgment in favor of the City and dismissed all of Schnitzer's claims. Schnitzer appeals the trial court's summary judgment orders only with regard to the tortious interference and § 1983/equal protection claims.

## ANALYSIS

A.   SUMMARY JUDGMENT STANDARD

We review a superior court's decision on a summary judgment motion de novo. *Zonnebloem, LLC v. Blue Bay Holdings, LLC*, 200 Wn. App. 178, 182, 401 P.3d 468 (2017). Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.*; CR 56(c). A genuine issue of material fact exists if reasonable minds could disagree on the conclusion of a factual issue. *Zonnebloem*, 200 Wn. App. at 182-83. We view all facts and reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. *Id.* at 182.

The moving party bears the initial burden of proving that there is no genuine issue of material fact. *Id.* at 183. Once a moving defendant shows that there is an absence of evidence to support the plaintiff's case, the burden shifts to the plaintiff to present specific facts that rebut the defendant's contentions and show a genuine issue of material fact. *Id.*

B.     TORTIOUS INTERFERENCE CLAIM

Schnitzer argues that it presented sufficient evidence to create genuine issues of material fact regarding the elements of tortious interference.  The City argues that the doctrine of legislative immunity precludes Schnitzer's tortious interference claim.  We agree with the City.[1]

Under the doctrine of legislative immunity, a government entity is immune from tort liability when it "conducts purely legislative acts." *Fabre v. Town of Ruston*, 180 Wn. App. 150, 162, 321 P.3d 1208 (2014).  "This remains true even where the government legislates arbitrarily, with improper motivations, in bad faith, or without making a considered and reasoned policy analysis." *Id.*  Legislative immunity applies for purely legislative acts "no matter how misconceived or misexecuted." *Id.*  The purpose of the doctrine is to prevent the courts from invading " 'the prerogatives of the legislative branch of government.' " *Id.* at 163 (quoting *Miller v. Pacific County*, 91 Wn.2d 744, 747, 592 P.2d 639 (1979)).

However, the fact that a legislative body makes a decision does not necessarily mean that the decision is a legislative act.  The Supreme Court in *Mission Springs, Inc. v. City of Spokane* stated:

> Although a local legislator may vote on an issue, that alone does not necessarily determine that he or she was acting in a legislative capacity.  Rather, "[w]hether actions . . . are, in law and fact, an exercise of legislative power depends not on their form but upon whether they contain matter which is properly to be regarded as legislative in its character and effect."

134 Wn.2d 947, 969, 954 P.2d 250 (1998) (internal quotation marks omitted) (quoting *Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 580 (9th Cir.1984)).  Legislative immunity

---

[1] The City also argues that the statute of limitations bars Schnitzer's tortious interference claim.  However, the City did not plead the statute of limitations as an affirmative defense to the tortious interference claim.  In addition, the City did not assert the statute of limitations as a ground for seeking summary judgment on this claim.  Therefore, we decline to address the City's statute of limitations argument regarding Schnitzer's tortious interference claim.

does not apply to administrative or executive acts performed by a legislative body. *Mission Springs*, 134 Wn. App. at 970.

Here, the city council – the City's legislative body – voted to enact an Ordinance that extended a zoning overlay to certain identified property. That Ordinance made changes to the Puyallup Municipal Code and amended the City's zoning map. On its face, this action was purely legislative in nature. *See Fabre*, 180 Wn. App. at 163 (stating that the city council's adoption of Ordinances constituted a "purely legislative act"). And even if the Ordinance was designed to single out the Schnitzer property, the fact that an action may have been performed with an improper motivation or in bad faith is immaterial to application of legislative immunity. *Id.* at 162.

Schnitzer argues that although the adoption of the Ordinance may appear to be legislative, the legislative immunity doctrine should not apply here for three reasons.

First, Schnitzer argues that legislative immunity does not apply because the Supreme Court in the LUPA action ruled that the Ordinance was not a legislative action. But Schnitzer misinterprets the court's ruling. The court's opinion did contain the heading "Ordinance 3067 is not a legislative action." *Schnitzer* II, 190 Wn.2d at 580. But the court was addressing a LUPA exception for " 'applications for legislative approvals such as area-wide rezones and annexations.' " *Id.* (quoting RCW 36.70C.020(2)(a)). The court held only that the Ordinance was not the type of legislative action that was *excluded by LUPA*. *Id.* at 581-83. The court did not address whether enacting the Ordinance was a legislative action for purposes of legislative immunity.

Second, Schnitzer argues that legislative immunity does not apply because the city council did not have the authority to enact the Ordinance, as determined by the superior court

and this court in the LUPA appeal. However, in *Fabre* this court stated that whether the city council "had legal authority to pass the ordinances has no effect on the government's immunity for passing the laws." 180 Wn. App. at 163.

Third, Schnitzer relies on *Mission Springs* to argue that the character and effect of the Ordinance was quasi-judicial, not legislative. Under the Puyallup Municipal Code, the rezone *should have been* handled by the hearings examiner in a quasi-judicial proceeding. *Schnitzer* III, 47900-1-II, slip op. at 11-12. But that does not mean that the city council's unlawful attempt to handle the matter legislatively somehow was a quasi-judicial action.

The city council's enactment of the Ordinance was a legislative act. We hold that the doctrine of legislative immunity precludes Schnitzer's tortious interference claim.

C. 42 U.S.C § 1983 CLAIM

Schnitzer argues that it presented sufficient evidence to create genuine issues of material fact regarding its § 1983 claim, which is based on an alleged violation of equal protection. The City argues that the statute of limitations bars the § 1983 claim. Schnitzer responds that either the LUPA appeal tolled the statute of limitations or the continuing wrong theory extended the limitation period. We agree with the City.

1. Legal Principles

Because there is no statute of limitations for 42 U.S.C. § 1983 claims, the appropriate limitation period for a § 1983 action is the forum state's statute of limitations for personal injury actions. *Southwick v. Seattle Police Officer John Doe #s 1-5*, 145 Wn. App. 292, 297, 186 P.3d 1089 (2008). The statute of limitations for personal injury actions in Washington is three years. *Id.*; RCW 4.16.080.

However, federal law controls when a cause of action accrues under § 1983. *Robinson v. City of Seattle*, 119 Wn.2d 34, 86, 830 P.2d 318 (1992). Under federal law, the cause of action accrues and the statute of limitations begins to run when the plaintiff knows or has reason to know that the injury that is the basis for their action has occurred. *E.g.*, *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1058 (9th Cir. 2002). In addition, federal law states that a cause of action accrues when a decision that results in injury to the plaintiff occurs, not when that decision ultimately is implemented. *Id.* at 1058-61; *see also Delaware State College v. Ricks*, 449 U.S. 250, 256-59, 101 S. Ct. 498, 66 L. Ed. 2d 431 (1980).

In *RK Ventures*, Seattle sent a notice to a nightclub to abate a public nuisance. 307 F.2d at 1053. A formal abatement hearing before a hearings examiner began a month later, but the abatement action was dismissed after the owners sold the nightclub. *Id.* at 1053-54. The former owners filed a § 1983 action against Seattle three years after the date the abatement hearing began. *Id.* at 1054. The court concluded that the cause of action accrued when the owners received the abatement notice, even though the abatement hearing had not yet been held. *Id.* at 1058-61.

Relying primarily on *Ricks*, the court stated that a cause of action accrues "when the operative decision was made, not when the decision is carried out." *Id.* at 1059. The court emphasized that even though the decision might be reversed after further procedures, the focus must be on when the wrongful decision occurs, not when the decision becomes irrevocable. *Id.* at 1060. The court concluded:

> As applied here, the fact of abatement (in the form of an order issued by a third-party hearing examiner) would not have constituted an actionable illegal act by the City. Rather, the City's decision to institute the abatement action, allegedly tinged with racial and viewpoint discrimination, was the operative alleged illegal act.

*Id.* at 1059.

9

The court recognized that "[n]otions of comity and commonsense suggest that a plaintiff should await the decision of the administrative or judicial process." *Id.* However, the court emphasized that *Ricks* precluded beginning the statute of limitations at the completion of the abatement action rather than at the time of the abatement notice. *Id.* at 1060 (citing *Ricks*, 449 U.S. at 260-61).

### 2. Accrual of Claim

Here, there is no question that Schnitzer knew that it had been injured when the city council enacted the Ordinance. The Ordinance placed significant development restrictions on the Property, including limiting the size of a building that could be constructed on the property to 125,000 square feet. And Schnitzer expressly alleged in its LUPA petition that the Ordinance had caused damage.

Further, the operative decision here clearly was the enactment of the Ordinance. Under *RK Ventures*, the § 1983 cause of action accrued when the city council enacted the Ordinance, even though subsequent proceedings could and did result in an invalidation of the Ordinance. *See* 307 F.3d at 1059-60.

We conclude that Schnitzer's § 1983/equal protection cause of action accrued in May 2014 when the city council enacted Ordinance 3069.

### 3. Tolling – Effect of Pending LUPA Appeal

Schnitzer argues the LUPA action tolled the statute of limitations on the § 1983/equal protection claim. We disagree.

Schnitzer's argument relies on a single statement in *Robinson*: "The plaintiffs in this case did not bring state actions prior to raising their federal claims so as to toll the statute of limitations during the pendency of their state court proceedings." 119 Wn.2d at 89. Schnitzer

suggests that this statement infers that if the plaintiffs in *Robinson* had brought a state action, that action would have tolled the statute of limitations on the plaintiffs' § 1983 action.

But as the City points out, there are several problems with Schnitzer's reliance on *Robinson*. First, the statement regarding tolling is dicta. In *Robinson* the plaintiff's did not file a state action before filing their § 1983 action, so the court did not need to address whether tolling applied.

Second, *Robinson* predated the adoption of LUPA. Therefore, even if *Robinson* stated that certain state actions would toll the statute of limitations for a § 1983 claim, that case obviously did not address whether *a LUPA appeal* would toll the statute of limitations.

Third, the statement in *Robinson* upon which Schnitzer relies has never been cited by any Washington court. And no other Washington court has held or even suggested that the pendency of a state action tolls the statute of limitations for § 1983 claims.

Schnitzer also argues that the policy underlying the statute of limitations supports tolling. Schnitzer relies on the statement in *Robinson* that "[t]he policy behind statutes of limitation is to ensure essential fairness to defendants and to bar plaintiffs who have 'slept on [their] rights.' " 119 Wn.2d at 89 (quoting *Burnett v. New York Cent. R.R.*, 380 U.S 424, 428, 85 S. Ct. 1050, 13 L. Ed. 2d 941 (1965)). Schnitzer points out that it did not sleep on its rights because it immediately filed the LUPA appeal and its claims have not gone stale. However, Schnitzer cites no authority for the proposition that these policies support the adoption of a tolling rule.

We conclude that *Robinson* does not compel a finding that a LUPA appeal tolls the statute of limitations for a § 1983 claim. In the absence of controlling authority, we decline to adopt such a rule.

4. Continuing Violation Theory

Alternatively, Schnitzer argues that accrual of the statute of limitations for the § 1983/equal protection claim is extended under the continuing violation theory. We disagree.

Under the continuing violation doctrine, a new claim accrues (and a new limitations period commences) when the continued enforcement of a statute inflicts a continuing or repeated harm. *Flynt v. Shimazu*, 940 F.3d 457, 462 (9th Cir. 2019). Stated differently, when the alleged wrongful conduct is part of a continuing practice, a lawsuit is timely if an act evidencing that continuing practice occurs within the limitations period. *Bird v. Dep't of Human Servs.*, 935 F.3d 738, 746 (9th Cir. 2019), *cert. denied,* 140 S. Ct. 899 (2020).

However, the Supreme Court in *Robinson* stated that the Ninth Circuit had rejected the continuing violation theory in the land use context. 119 Wn.2d at 89. Therefore, the court stated that the theory was not available in that case, which involved the imposition of fees on property owners who changed the use of or demolished low income housing. *Id.* at 42, 89. In addition, in *Cox v. Oasis Physical Therapy, PLLC* the court refused to extend the continuing violation doctrine beyond discrimination claims. 153 Wn. App. 176, 191-92, 222 P.3d 119 (2009).[2]

More recently, the United States District Court for the Western District of Washington refused to apply the continuing violation theory to a § 1983 claim. *Dunn v. City of Seattle*, 420 F. Supp. 3d 1148, 1162-63 (W.D. Wash 2019). The court stated that "no Washington court has applied the continuing tort doctrine outside of property claims and employment discrimination

---

[2] In *Segaline v. Department of Labor & Industries*, the Supreme Court declined to address whether a claim was timely under the continuing violation theory because the issue had not been raised below. 169 Wn.2d 467, 476 n.8, 238 P.3d 1107 (2010).

claims. In fact, Washington courts have expressly declined to extend the continuing tort doctrine beyond these contexts." *Id.* at 1162 (internal citations omitted).[3]

We decline to apply a continuing violation theory to Schnitzer's § 1983/equal protection claim arising out of a land use ordinance.

5.    Summary

We conclude that Schnitzer's § 1983 claim accrued in May 2014 when the city council enacted the Ordinance, Schnitzer's LUPA appeal did not toll the statute of limitations, and the continuing violation theory is inapplicable. Schnitzer's § 1983 claim was filed in April 2020, long after the statute of limitations had expired. Therefore, we hold that the statute of limitations bars Schnitzer's § 1983 claim.

D.    ATTORNEY FEES ON APPEAL

The City requests an award of reasonable attorney fees on appeal, arguing that Schnitzer's appeal is frivolous. We decline the City's request.

An appellate court may order a party to pay compensatory damages for filing a frivolous appeal. *Lutz Tile Inc., v. Krech*, 136 Wn. App. 899, 906, 151 P.3d 219 (2007). An appeal is frivolous if, considering the entire record, the court rules that the appeal presents no debatable issues and is devoid of merit. *Id.* The court resolves all doubt in favor of the plaintiff. *Id.*

Schnitzer's appeal is not frivolous. Even though we affirm, Schnitzer presented debatable arguments. Therefore, we decline to award attorney fees to the City.

---

[3] In *Dunn*, the court also noted that a continuing violation requires continuing wrongful acts, not merely continuing effects of a wrongful act. 420 F. Supp. 3d at 1162-63. Here, there was only one wrongful act – enactment of Ordinance 3067. Any damages Schnitzer incurred were caused by the continuing effect of that wrongful act.

CONCLUSION

We affirm the trial court's grant of summary judgment in favor of the City on Schnitzer's tortious interference and § 1983 claims.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

LEE, C.J.

CRUSER, J.